UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

SEP 29 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-589-GWU

FLORA K. WILLIAMS,                                                          PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled. If no, proceed to Step 2.
        See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
        or mental impairment(s)? If yes, proceed to Step 3. If no, the
        claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities? If yes, proceed to
        Step 4. If no, the claimant is not disabled. See 20 C.F.R.
        404.1520(c), 404.1521, 416.920(c), 461.921.

Williams

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Williams

> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242

(6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Flora K. Williams, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a mood disorder, a hiatal hernia, chronic sinusitis, right sacroiliac joint fixation, hypertension, gastritis, esophagitis, and carpal tunnel syndrome. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Williams retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 22-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of light level exertion, and also had the following non-exertional impairments. (Tr. 381-2). She: (1) could stand and walk for two hours in an eight-hour day (no more than 30 minutes at a time); (2) could sit six hours in an eight-hour day (no more than one hour at a time); (3) could never climb, balance, crouch, kneel, or crawl; (4) could occasionally stoop; (5) was limited to frequent but not continuous handling and fine manipulation; (6) could not have concentrated exposure to unprotected heights, moving or hazardous machinery, or whole body vibration; and (7) could understand, remember, and carry out simple instructions and tasks in an

7

object-focused environment with minimal social interaction with co-workers and supervisors and no interaction with the public. (Tr. 383-4). The VE responded that there were assembly and "inspection checking " occupations available for such a person, with a total of 3,950 jobs in Kentucky and 201,000 nationally. (Tr. 384).

On appeal, this Court must determine whether the hypothetical factors are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff argues on appeal that the ALJ improperly rejected the sitting restrictions imposed by her treating family physician, Dr. Suzanne Colton. Dr. Colton began treating the plaintiff in January, 2002 (Tr. 181) and Mrs. Williams had been her patient for over two years when the physician completed a residual functional capacity assessment form on March 6, 2004 (Tr. 330-1). This assessment, which is the only assessment given by a treating or examining source, limits the plaintiff to light level exertion, standing and walking two hours in an eight-hour day (no more than 30 minutes at a time), sitting four hours in an eight-hour day (no more than one hour at a time), never climbing, balancing, crouching, kneeling, or crawling, occasionally stooping, having restrictions on handling, feeling, pushing, pulling, and working around heights, moving machinery, and vibration. (Tr. 330-1). The reasons given were sacroiliac joint tenderness, reduced range of motion of the back, numbness of the hand, and decreased strength. (Tr. 331). The combined level of standing and sitting restrictions would presumably mean that Mrs. Williams could not work an eight-hour day.

8

The medical evidence supporting Dr. Colton's restrictions includes an x-ray in March, 2002 showing osteoarthritic lipping of the dorsal spine. (Tr. 195). Evidence in the record also showing musculoskeletal abnormalities were results of an examination by Dr. Jose Echeverria in May, 2002 which included findings of severe tenderness on palpation and spasm of the paraspinal muscles in the lumbosacral area, although x-rays and a CT scan were read as normal, and limited range of motion of the back and tenderness to palpation of the sacroiliac joints along with positive straight leg raising on the right, and numbness radiating down the right leg on examination by Dr. Yasser A. Nadim in August, 2002, for which he gave injections (Tr. 289). On September 16, 2002, Dr. Nadim performed a percutaneous pinning of the right sacroiliac joint. (Tr. 199, 290). Mrs. Williams informed Dr. Colton that the pain had not been quite so bad since this operation, and the physician reviewed x-rays which she thought were "OK," and an MRI which showed no obvious herniation, although Dr. Colton noted that she was inexperienced in reading MRIs. (Tr. 158). Nevertheless, the plaintiff complained that she continued to have considerable back and leg pain, and could not even stand to cook. (Id.). Dr. Colton renewed the patient's prescription for Lortab, and added Celebrex. (Tr. 159). The complaints of back pain continued, however, and Mrs. Williams indicated that her condition was not getting any better. (Tr. 144-50).

At this point, a non-examining state agency reviewer, identified as "Audra Herrington SDM" prepared a physical residual functional capacity assessment which

9

reviewed the evidence and concluded that the plaintiff could perform medium level work, could stand or walk six hours in an eight-hour day, sit six hours in an eight-hour day, and had no non-exertional restrictions. (Tr. 241-6). Herrington commented that the objective medical evidence did not support the degree of alleged restrictions. (Tr. 246). Dr. Timothy Gregg, a non-examining state agency physician, affirmed the prior findings in a July 29, 2003 physical assessment which did not list any additional rationale. (Tr. 276-84).

Subsequently, the plaintiff continued to be treated by Dr. Colton and, in August, 2003, she complained not only of hand numbness, but "intolerable" pain in her back, hip, and leg. (Tr. 325). She was unable to afford a pain clinic, and began crying in Dr. Colton's office. Dr. Colton commented that "I think she's suffering and has been for some time," recommended outpatient mental health counseling, renewed her prescriptions for pain medications, and suggested that she restart Elavil to help with both sleep and chronic pain. (Id.). On follow-up in November, she was "still having a miserable time with pain," and had run out of her pain medication. (Tr. 320). There was also an indication that the plaintiff was having panic attacks.

While the opinion of a non-examining physician may be accepted over that of an examiner, the non-examiner must have had access to the entire record and clearly explained the reasons for the difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In the present case, Dr. Colton was a treating source entitled to great deference, and neither of the non-examining sources had access

10

Williams

to all the evidence. Furthermore, the only one of the non-examiners who provided a rationale was not even an acceptable medical source under the Commissioner's regulations.  20 C.F.R. Section 916.913

The ALJ did accept most of Dr. Colton's restrictions, but she refused to accept the sitting restrictions, stating that while "the claimant has a pin in her sacroiliac joint . . . there is absolutely no evidence that she has, or has ever had, any bony abnormalities in her spine or hips." (Tr. 21).  Nor was there evidence of weakness or neurological deficit. (Id.).  It is not obvious to a lay reviewer, however, that a pin in the sacroiliac joint could not possibly cause pain on sitting, which the plaintiff consistently complained of in her applications (Tr. 94, 127) and described in her administrative testimony (Tr. 361).

In view of the opinion of the treating physician, a remand will be required for further consideration of the plaintiff's residual functional capacity.

This the _29_ day of September, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11